Cite as 2024 Ark. App. 545

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-436

| | | |
|---|---|---|
| RANDY DAVIS | | Opinion Delivered November 6, 2024 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23DR-15-27] |
| V. | | |
| | | HONORABLE SUSAN WEAVER, JUDGE |
| SUSAN MORTON | | |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Randy Davis filed a motion to clarify the property-settlement agreement he and appellee Susan Morton had previously entered into upon their divorce. Specifically, Davis sought to clarify the agreement regarding Morton's entitlement to a portion of his military retirement benefits. The Faulkner County Circuit Court denied his motion, and Davis appealed. We affirm.

The parties were married in 1994, and in January 2015, Morton filed a complaint for divorce. The parties executed a property-settlement agreement prepared by Morton's attorney. Davis was not represented by an attorney. The circuit court entered an agreed decree of divorce that incorporated the property-settlement agreement. The agreement divided personal property and awarded Davis the marital home with Morton waiving her

equity interest in the home. The agreement awarded Morton $1000 in alimony for thirty-six months and a one-time payment of $5000 "[d]ue to the great disparity between the parties' income throughout the marriage." With regard to Davis's military retirement benefits, the agreement provided as follows:

> B. Plaintiff was married to Defendant, a Uniformed Service member, and the marriage overlapped with at least ten years of credible service, "10 Year Rule." Plaintiff is entitled to 50% of Defendant's monthly retired military pay, once Defendant begins receiving such payments. Plaintiff shall request direct payment of such funds through the Uniformed Service designated agent, Defense Finance and Accounting Services, (DFAS) from Defendant's retired military pay via DD form 2293, Application for Former Spouse Payments from Retired Pay.

> C. The Defendant shall designate the Plaintiff as his beneficiary of the Survivor Benefit Plan (SBP) with regards to military retirements. The Defendant shall bear the cost burden of the SBP. Defendant shall establish a Survivor Benefit Plan election for Defendant via DD Form 2656-1, Survivor Benefit Plan (SBP) Election Statement for Former Spouse Coverage, no later than thirty (30) days from the entry of this Decree.

In November 2022, Davis filed a motion to clarify the decree, alleging that the decree was not drafted with sufficient clarity to allow DFAS to implement the division of his military retirement. Morton filed a response opposing Davis's motion and stated affirmatively that she was receiving her marital portion of the retirement through DFAS. According to Davis, Morton was receiving benefits to which she was not entitled under the agreement. He alleged that, at the time of the divorce, he had accumulated sufficient points to be entitled to draw retirement benefits as a result of his service from 1988 to 2008 in the United States Army National Guard, a reserve component. Davis testified that retirement benefits from a reserve

component are calculated on the basis of points earned while serving and begin at age sixty.[1] At the time of the divorce, Davis had been serving as an active-duty member of the United States Army since 2001 but had not yet served a sufficient period of time to become vested in active-duty retirement. He testified that active-duty retirement is calculated on the basis of total years of service and begins immediately upon retirement. He became eligible for active-duty retirement on June 30, 2020, after the parties' 2015 divorce.

Davis testified that when he read the retirement-division paragraph in the parties' agreement, he understood it to mean that Morton was entitled to a percentage of his vested retirement, which at that time was his reserve National Guard retirement. He testified that because he was not vested in his active-duty retirement at the time of the divorce, he could have dropped out of the service and not received any retirement from active duty. Davis said that he received a letter from DFAS in October 2022 informing him that Morton had filed an application in September to receive a portion of his active-duty retirement and had been receiving $2246 a month. Davis testified that he was also paying around $340 a month for the Survivor Benefit Plan premium based on his active-duty retirement. He wanted to be reimbursed because he believed Morton was entitled only to the retirement he was vested in at the time of the divorce—the reserve retirement.

On cross-examination, Davis agreed that the retirement provision in the agreement did not contain the words "vested," "reserve retirement," "National Guard retirement," or

---

[1]Davis's sixtieth birthday was more than five months after the hearing.

3

"active duty." Morton testified that there was other property that she gave Davis in the divorce in exchange for the retirement payments; however, she acknowledged that she had not talked with Davis about the fact that the agreement was for all of his retirement, not just reserve retirement.

The court entered an order denying Davis's motion upon finding that there is no ambiguity in the parties' property-settlement agreement. The court further found that Davis's motion was untimely because almost eight years had passed since execution of the agreement, and the court had no legal basis to modify the agreement.

A court has no authority to modify an independent contract that is made part of a divorce decree. *Haggard v. Haggard*, 2017 Ark. App. 542, 530 S.W.3d 903. While the agreement is still subject to judicial interpretation, we must apply the rules of contract construction in interpreting the agreement. *Id.* When a contract is unambiguous, its construction is a question of law for this court, and the intent of the parties is not relevant. *Id.* When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.*

Davis first argues that the circuit court erred in finding that the agreement was unambiguous. He contends that the court should have found that the agreement was ambiguous and interpreted it against the drafter to divide only the retirement benefits that were vested at the time of the agreement—the reserve benefits. He argues that because his active-duty benefits were not vested at the time of the divorce, they would not have been

4

divisible by the court. *See Pelts v. Pelts*, 2017 Ark. 98, 514 S.W.3d 455 (holding that ex-husband's vested property interest in reserve retirement could be divided at time of divorce, but his potential future interest in active-duty retirement could not). Davis acknowledges that the parties here entered into an agreement regarding the division of retirement unlike in *Pelts* where the court divided marital assets. However, he contends that the agreement's use of the word "entitled" made it clear to him that the agreement referenced only his vested retirement.

Morton argues that the agreement's use of the word "entitled" is not a reflection of what she is entitled to under Arkansas law; rather, "entitled" is simply the verb the parties chose to reflect their agreement that she would receive 50 percent of Davis's monthly military retirement benefits. We agree. Even if Davis's active-duty retirement would not have been divisible by the court, the parties were free to contemplate his future retirement and enter into a binding contract to award Morton a portion of those benefits. *See Buckingham v. Gochnauer*, 2017 Ark. App. 660, 536 S.W.3d 155 (affirming finding that ex-husband had contractually bound himself to pay ex-wife portion of military retirement, even though the retirement had not vested at the time of the divorce).

Here, the agreement states that Morton "is entitled to 50% of [Davis's] monthly retired military pay, once [Davis] begins receiving such payments." This language is unambiguous and is not qualified by terms such as "vested," "active duty," or "reserve." Regardless of the source of Davis's monthly retirement pay, the agreement entitles Morton to 50 percent. When a contract is plain, unambiguous, and complete in its terms, parol

5

evidence is not admissible to contradict or add to the written terms. *Haggard*, *supra*. Accordingly, Davis's testimony regarding his understanding of the agreement is irrelevant. *See Parker v. Parker*, 2019 Ark. App. 607, 591 S.W.3d 818.

Davis next argues that even if the agreement is unambiguous, it may still be interpreted in his favor "in accordance with the plain meaning of the language employed." *Parker*, 2019 Ark. App. 607, at 8, 591 S.W.3d at 823. He argues that the court failed to clarify or interpret the agreement and instead only found that there was no legal basis to modify the agreement. Implicit in the court's denial of Davis's motion, however, is that the court interpreted the agreement the same way DFAS had interpreted it in paying Morton her portion of the benefits. Because the court found the agreement was being interpreted correctly, there was no need for clarification.

Last, Davis challenges the circuit court's finding that his motion was untimely. He argues that the agreement contained a latent ambiguity that he was not aware of until he received notice in October 2022 that Morton was receiving benefits from his active-duty retirement. Davis filed his motion the following month. While a court has no authority to modify an independent contract that is made part of a divorce decree, the agreement is still subject to judicial interpretation. *See Haggard*, *supra*. Accordingly, to the extent the circuit court found that a request to interpret and clarify the agreement eight years after its entry is untimely, we disagree. However, this entitles Davis to no relief because we hold that the circuit court correctly found that there is no ambiguity in the agreement, that there is no need to clarify the agreement, and that there is no basis to modify the agreement.

Affirmed.

THYER and WOOD, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*Robertson, Oswalt & Nony*, by: *Chris Oswalt*, for appellee.